Argued July 9, affirmed September 26, 1974

WAGGONER ET AL, *Respondents, v.* OREGON
AUTOMOBILE INSURANCE CO. ET AL,
*Appellants.*
526 P2d 578

*Mel Kosta,* Klamath Falls, argued the cause for appellants. With him on the briefs were Kosta and Brant, Klamath Falls.

*J. Anthony Giacomini,* Klamath Falls, argued the cause for respondents. With him on the brief were Giacomini, Jones & Zamsky, Klamath Falls.

TONGUE, J.

This is an action for a declaratory judgment under an indemnity agreement in a lease under which the lessee-operator of a grocery store agreed to indemnify the lessor-owner of the building against liability to any other person for personal injuries resulting from any condition or lack of repair of the leased premises.

By this action the lessor-owner of the building and his insurance company seek to recover from the lessee-operator and his insurance company the sum of $16,457.20 paid by lessor's insurance company toward the satisfaction of a judgment in favor of Katie M. Eck against both the lessor-owner and the lessee-operator for personal injuries sustained by her in a fall at the "entryway" in front of the store.[1] The action also seeks to recover costs and attorney fees incurred in the trial and appeal of that case, as well as attorney fees and expenses incurred in this case.

Defendants appeal from a judgment declaring the indemnity agreement to be binding on the parties and awarding plaintiffs the sum of $16,457.20 paid by plaintiff insurance company toward the satisfaction of the *Eck* judgment, plus legal fees, expenses and costs incurred by plaintiffs in the *Eck* case in the sum of $9,250, together with $3,500 as attorney fees in this case.

1. *The Indemnity Agreement was valid and enforceable.*

Defendants' principal assignment of error is that the trial court erred in holding that the indemnity provision of the lease was valid and enforceable.

---

[1] That judgment was affirmed by this court in Eck v. Market Basket, 264 Or 400, 505 P2d 1156 (1973).

The lease includes the following provisions:

"Lessee shall save and hold Lessor harmless from, and hereby indemnifies Lessor against liability * * * for or on account of any * * * injury to persons * * * that may result by reason of any condition or present or future lack of repair of the Leased Premises * * * or in any manner whatsoever growing out of the past, present or future condition or use of the Leased Premises * * * including any attorney's fees and costs."

The lease also provided that:

"During the lease term, Lessee shall, at its own expense maintain in full force and effect a policy or policies of comprehensive liability insurance, * * * that will insure Lessee against liability for injury to persons * * * occurring in or about the premises. The liability under such insurance shall not be less than One Hundred Thousand Dollars ($100,-000.00) for any one person injured or killed, not less than Three Hundred Thousand Dollars ($300,-000.00) for any one accident, * * *."

Defendants contend that the previous complaint by Katie M. Eck against Mr. Waggoner (the lessor) and Mr. Duffy (the lessee) alleges affirmative and active negligence on the part of Mr. Waggoner; that there was testimony in that case that he undertook to remove the carpeting and resurface the area in which Mrs. Eck fell, but that he failed to accomplish this before the fall of Mrs. Eck, and that this constituted active negligence by plaintiff Waggoner which invalidated the indemnity clause of the lease.

Defendants also contend that as a general rule a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligence unless such an intention is expressed in clear and unequivocal terms (citing *Southern Pac. Co. v. Layman,* 173 Or 275, 279-85, 145 P2d 295 (1944),

and *So. Pac. Co. v. Morrison-Knudsen Co.*, 216 Or 398, 407-20, 338 P2d 665 (1959), among other cases); that indemnity contracts are usually intended to provide against loss caused by physical conditions that are under the indemnitor's control and over which the indemnitee has no control, and that this indemnity clause does not clearly and unequivocally provide that the plaintiff Waggoner (the indemnitee) shall be indemnified for his own negligence.

■ In *So. Pac. Co. v. Morrison-Knudsen Co., supra,* this court held (at 408-10, 419) that in an action for indemnity based upon an indemnity agreement, as distinguished from an action for common law indemnity, the common law distinctions between "active" and "passive" negligence and between "primary" and "secondary" negligence, become "inappropriate"; that in such an action the intent of the parties presents the "paramount problem"; and that the indemnitee may legally contract for indemnity for a claim based in whole or in part on its own negligence, if not "wanton or criminal" in nature. To the same effect, see St. Paul Fire *v. U.S. Nat. Bank,* 251 Or 377, 382-83, 446 P2d 103 (1968).

■ Upon examination of the indemnity provisions of this lease, as compared with the indemnity contract in *So. Pac. Co. v. Morrison-Knudsen Co., supra* at 401, 417, we find that the intent is clearly expressed in sufficiently broad and comprehensive terms that plaintiff Waggoner was to be held harmless and indemnified from liability for all personal injuries resulting from "any" condition or lack of repair of the leased premises, regardless of whether or not such condition or lack of repair may have resulted from the active negligence of Mr. Waggoner. This intent is made even

more clear by the further lease provision under which Mr. Duffy, as the lessee, agreed to maintain at his own expense an insurance policy to insure against liability for injury to persons "occurring in or about the premises."

■ This is not a case in which there was evidence of any great disparity between the parties in the financial sense or in which the scope and status of the privilege conferred upon Mr. Duffy as the indemnitor was so limited that the imposition of indemnity for the negligence of Mr. Waggoner under those circumstances would be an "excessive price" for the "mere privilege" returned, as in *Southern Pac. Co. v. Layman, supra* at 283. Both Waggoner and Duffy are knowledgeable business men and were found by the trial court to be "on equal footing" at the time they entered into the indemnity contract. See *So. Pac. Co. v. Morrison-Knudsen Co., supra* at 412-13, and *Southern Pac. Co. v. Layman, supra* at 283. Even under the test of "active" and "passive" negligence, it appears from the record in the *Eck* case not only that Mr. Waggoner was guilty of negligence in the manner in which he undertook to repair the area where Mrs. Eck fell upon leaving the store, but that Mr. Duffy, as the lessee and operator of the grocery store, was also negligent in failing to properly warn customers upon leaving the store.

Under these circumstances we hold that the trial court did not err in finding that the indemnity provisions of the lease were valid and enforceable and were intended to provide indemnity in this case.[2]

---

[2] In their reply brief defendants contend that Mrs. Eck fell in a "common area," as defined by the lease, and that its indemnity provisions had no application to that area. The Amended

## 2. *The award of, attorney fees was proper.*

Defendants' second assignment of error is that the trial court erred in awarding excessive attorney fees in the sum of $9,250 for the trial and appeal of the original case and $3,500 for the trial of this case.

At a separate hearing on attorney fees plaintiffs' attorneys offered in evidence records showing that they devoted 262.5 hours of work in the trial and appeal of the original case and that $40 per hour is a reasonable charge for the work of an attorney in a case of this nature, so as to result in a total fee of $10,500.

Defendants offered the testimony of an experienced and respected trial lawyer as an expert witness who testified that, in his opinion, it should not have been necessary to devote that much time to the trial and appeal of the original case; that a fee of $1,800 to $2,000 would be a reasonable fee for the trial of the case, based upon a charge of $35 per hour and that $3,000 would be a reasonable fee for the appeal of the case, based upon a charge of $30 per hour, so as to result in a total fee of between $3,000 and $4,000.

■ It has long been settled in Oregon that the amount of attorney fees to be allowed in both an action at

---

Complaint in this case alleged that "Mrs. Eck fell on the leased premises." That allegation was admitted by defendants' Amended Answer. In that answer defendants also say that it was alleged by Mrs. Eck in the original case that Mr. Waggoner "did negligently repair the entryway and exit of said premises and leave said entryway in a dangerous and hazardous condition" and that "evidence was adduced at the trial that * * * he undertook to repair said concrete area * * *." In addition, plaintiffs' brief on this appeal states that Mrs. Eck "fell * * * on the sidewalk area of the premises leased" by Waggoner to Duffy. It is also implicit in the decision of the trial court that under the facts of this case it considered that area subject to the indemnity provisions of the lease. We agree.

law and a suit in equity is a question of fact to be determined by the trier of the facts upon pleading and evidence in the same manner as any other question of fact, unless the parties stipulate that the court may fix the attorney fees without hearing evidence on that issue. See *State High. Com. et al v. Kendrick et al,* 227 Or 608, 610-11, 363 P2d 1078 (1961), and the numerous cases cited therein. Although this action seeks a declaratory judgment relating to the validity and application of the indemnity provisions of the lease, it is essentially an action at law to recover a judgment under a contract of indemnity.

The award by the trial court of $9,250 in attorney fees for the trial and appeal of the original case, as that matter was presented to the trial court for decision in this case, was based implicitly upon its determination of the amount of time reasonably required for the trial and appeal of that case and what would be a reasonable charge per hour for such a trial and appeal, in the light of the nature and difficulty of the case, the amount involved, and the result obtained, among other things. See *Chalmers v. Oregon Auto. Ins. Co.,* 263 Or 449, 455, 502 P2d 1378 (1972). See also Code of Professional Responsibility DR 2-106, and 3 Appleman, Insurance Law and Practice 424, § 1646 (1967).

■ Under these facts and circumstances, this court cannot properly set aside an award of attorney fees by a trial court which is based upon substantial, competent evidence. *State High. Com. et al v. Kendrick et al, supra* at 613; *Highway Com. v. Zachary et al,* 230 Or 381, 383, 370 P2d 237 (1962), and cases and authorities cited therein.

The trial court was also in a better position than

this court to consider the credibility of the testimony and time records offered by plaintiffs and the testimony offered by defendants and to consider the amount of time reasonably required for the trial and appeal of the original case, and a reasonable charge per hour for such time, as well as other factors to be considered in the determination and award of a reasonable attorney fee for both the trial and appeal of the original case and for the trial of this case.

It would appear that the award by the trial court would compensate plaintiffs' attorneys for the amount of work devoted by them, according to their time records, at a rate of between $35 and $40 per hour. We cannot say that an award of attorney fees based upon such an hourly charge for the defense of a personal injury case by an insurance company or in an action for indemnity between insurance companies was excessive. On the contrary, we hold that the award by the trial court was supported by substantial, competent evidence.

Finding no error, the judgment of the trial court is affirmed.[9]

---

[9] Defendants also assign as error the failure of the trial court to award judgment to them on their counterclaim in the sum of $8,286.45 as a pro rata reimbursement of moneys paid by them toward satisfaction of the *Eck* judgment, on a theory of pro rata contribution between tortfeasors. Because we have held that the indemnity agreement between plaintiff Waggoner and defendant Duffy was valid and enforceable, it follows that Mr. Duffy and his insurance company can have no such claim against Mr. Waggoner and his insurance company.