Argued and submitted January 22, reversed in part; otherwise affirmed
July 3, 1996

Thomas B. FORSYTHE,
*Plaintiff,*

*v.*

HOMESTEAD DEVELOPMENT CORP.,
an Oregon corporation;
Precision Excavating, Incorporated,
an Oregon corporation;
Glencoe West Trust, Arthur E. Pearson, Trustee;
Unique Kitchens, Inc.,
an Oregon corporation;
Tankersley Farms Incorporated;
Paul M. Olds, Jr., doing business as
P & S Construction of Hillsboro;
Parker Development, a partnership;
Kathleen Furrow, James Furrow, Virginia Furrow,
and Diana Furrow, as beneficiaries in Trust Deed;
Chicago Title Insurance Co.,
as beneficiary of Trust Deed;
West One Bank Oregon, S.B.,
as beneficiary of Trust Deeds;
State of Oregon, Dept. of Revenue,
as lien claimant of tax liens;
Credit Service Co.; California Hawaiian Sugar;
Power Rental Company,
*Defendants.*

PRECISION EXCAVATING, INCORPORATED,
an Oregon corporation,
*Appellant,*

*v.*

HOMESTEAD DEVELOPMENT CORP.,
an Oregon corporation,
*Respondent.*

(C921063CV; CA A86318)

919 P2d 537

46

John M. Berman argued the cause and filed the briefs for appellant.

Charles E. Corrigan argued the cause for respondent. With him on the brief were Mark L. Busch and O'Donnell Ramis Crew Corrigan & Bachrach.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

This is an appeal from a judgment in a mechanic's lien foreclosure action filed by plaintiff Forsythe against, *inter alia*, appellant Precision Excavating, Inc. (Precision) and respondent Homestead Development Corporation (Homestead).[1] We affirm in part and reverse in part.

Homestead is a developer of small subdivisions. Precision is an excavating company. Forsythe was an employee of Precision. In May 1992, Precision and Homestead entered into a contract for Precision to work on a subdivision in Hillsboro. In November 1992, after completion of the job, Forsythe filed a construction lien for $18,793.90. After the lien was filed, Precision's counsel, Berman, wrote Homestead's counsel, Corrigan, acknowledging the lien and stating that, "if suit is filed, Precision Excavating, Inc. will defend Homestead Development Corp." In late November, Forsythe filed this action against Precision and Homestead for "Foreclosure of Mechanics Lien."

After the action was filed, Homestead tendered defense to Precision pursuant to ORS 87.070.[2] Berman responded that, before accepting tenders of defense, he needed to know that there was no conflict between Precision and Homestead because of amounts that Precision claimed Homestead still owed. An exchange of correspondence followed in which Homestead continued to demand that Precision accept the defense, and Precision continued to press for an accounting.

Although there was no resolution of the amount due from Homestead to Precision, in February 1993, Precision filed an answer to Forsythe's complaint in which Precision accepted the tender of defense on behalf of Homestead.[3] However, Precision also included in the answer a cross-claim

---

[1] Only Homestead and Precision are parties to this appeal.

[2] ORS 87.070 provides, in part:

"Where a claim of lien is filed pursuant to ORS 87.035 for work done or material or equipment furnished to any contractor, the contractor shall defend any action brought thereupon at the expense of the contractor, and during the pendency of such action the owner may withhold from the contractor the amount of money for which such claim of lien is filed."

[3] Precisions' answer stated:

against Homestead for $8,563 that Precision claimed that Homestead had not paid.

The dispute over payment continued. On July 6, Berman wrote Corrigan that Precision was defending the lien claim and that Berman did not "perceive any actual or potential conflict." However, if Corrigan did, "he is welcome to take over the defense of Homestead Development with regard to the lien." Meanwhile, the case was assigned to arbitration for August 27. ORS 36.400 *et seq*. On August 13, Berman sent a letter to Corrigan requiring that $8,500 be put into Berman's trust account to be used first to satisfy any lien ultimately recovered and any remaining funds to be disbursed to Precision. Berman stated that if that arrangement was not acceptable, then Corrigan "should plan on participating in the arbitration[.]" On August 17, Corrigan responded that he and his firm were "now representing Homestead Development for all purposes" in the litigation.

Homestead did not file an answer to Forsythe's complaint but did file an answer and cross-claim in response to Precision's cross-claim. Homestead alleged:

> "Defendant Precision is obligated to defend Homestead against plaintiff's claim under common law indemnification principles and pursuant to ORS 87.070. By filing its cross-claim against Homestead in this action, defendant Precision has created an untenable conflict of interest, forcing Homestead to choose between proceeding with counsel who at the same time is representing a cross-claim adversary, or to obtain its own independent counsel resulting in Precision's violation of its duty to defend Homestead, all resulting in damages to defendant Homestead in an amount to be determined at trial, including but not limited to, Homestead's attorney fees incurred herein.

> "WHEREFORE, Homestead prays that Precision's cross-claim be dismissed, for judgment against Precision in Homestead's cross-claim, and for an award of attorney fees, costs and disbursements."

---

"At the request of Defendants Homestead Development Corp., [et al,] Precision Excavating, Inc. accepts the tender of defense on behalf of said Defendants, and answers Plaintiff's complaint on their behalf as well as on its own behalf."

At arbitration, the arbitrator resolved Forsythe's claims against him and held that Precision was owed $9,641 on its cross-claim and that Homestead was not entitled to recover attorney fees. Homestead sought a trial *de novo* of the cross-claim award in the circuit court.[4] The trial court found that Precision was obligated to defend Homestead, which "had the right to expect and receive the undivided loyalty of [Berman] in representing it on the tender of defense," and that, when Precision filed the cross-claim against Homestead, Homestead was "more than justified" in retaining independent counsel. The court then held:

"(1)  Precision is entitled to prevail on its cross-claim in the sum of $7,768.59.

"(2)  Homestead is entitled to prevail on its cross-claim against Precision in the sum of $5,380.65.

"(3)  Homestead is entitled to recover attorney fees and costs in this proceeding[.]"

■        Precision's first two assignments of error challenge the court's findings that provide the basis on which it awarded Homestead attorney fees on its cross-claim. We consider the assignments together. ORAP 5.45(6). We review findings of historical fact to determine whether there is evidence to support them, *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984), and legal conclusions for errors of law. *Bernard v. First Nat'l Bank*, 275 Or 145, 153, 550 P2d 1203 (1976).

Precision first argues that the court erred in finding that Precision was obligated to defend Homestead and in failing to recognize that Berman only had an attorney-client relationship with Precision, not with Homestead. Precision's second assignment of error argues that the court erred in finding that Precision's acceptance was conditional and that Homestead was justified in retaining independent counsel when the cross-claim was filed.

■        Precision first argues that the court erred in finding that it was obligated to defend Homestead on either statutory

---

[4] Forsythe did not appeal to the circuit court, and the issues involving the mechanics lien were not before the trial court.

or common-law grounds. Precision acknowledges that, under ORS 87.070, a contractor is required to defend an action brought on a lien at the expense of the contractor, but it contends the allegations of Forsythe's complaint were "grossly insufficient" to state a claim for lien foreclosure. *See Anderson et al. v. Chambliss et ux.*, 199 Or 400, 408, 262 P2d 298 (1953) (party claiming mechanic's lien must show in his complaint substantial compliance with requirements of statute). It argues that it could not tell from the complaint that Forsythe was pleading a lien foreclosure.

Even if Forsythe's complaint was subject to attack because it was not properly pleaded (an attack that Precision indeed made by affirmative defense), or could be successfully defended against (which occurred), we reject Precision's contention that it was not possible to tell that Forsythe's pleading was an attempt to foreclose his lien. The complaint was titled "Foreclosure of Mechanic's Lien" and alleged unpaid wages, nonpayment for rental equipment and nonreimbursement for fuel. Precision treated the complaint as a foreclosure, referring in correspondence to the "foreclosure case by Forsythe" and filing its responsive pleading, which included an affirmative defense that Forsythe had failed to state facts sufficient to constitute a foreclosure claim. We agree with the trial court that Precision had an obligation under ORS 87.070 to defend Homestead against Forsythe's claim.[5]

■    Precision next contends that, even if it was obligated to defend, Precision's acceptance of the tender of defense did not create a conflict of interest that would preclude Precision from filing a cross-claim, because there was no attorney-client relationship between Berman and Homestead. Homestead argues that the attorney-client issue need not be reached because Precision's obligation to pay for the cost of Homestead's defense is resolved by *United Pac. Ins. v. Sunset Cove*, 263 Or 303, 502 P2d 261 (1972).

In *Sunset Cove*, the defendant (Sunset Cove) had a contract with a contractor to remove sand from the beach at Seaside. The contract included an indemnity agreement that

---

[5] Because we determine that Precision was obligated under ORS 87.070, we do not address Precision's alternative contention that Homestead was not entitled to indemnity under common-law principles.

Sunset Cove would hold the contractor harmless from any claims resulting from the work. When the state filed an action against Sunset Cove and the contractor seeking an injunction and damages, Sunset Cove rejected the tender of defense made to it by the contractor's insurer. It determined that it had a conflict of interest, in part, because the contractor had an unpaid claim against Sunset Cove.

After the contractor's insurance company successfully defended the state's claim, it sought to recover the attorney fees and costs it had incurred. The Supreme Court held that neither the tender of the defense and its rejection nor whether there was an actual conflict of interest was the controlling question:

> "Because Sunset and Contractor agreed that there was such a conflict, however, and because as a result, Contractor properly rejected plaintiff's tender of defense, it does not follow that Sunset was relieved of its responsibility to pay the reasonable defense costs incurred by Contractor.
>
> "Under these circumstances it is clear, in our opinion, that Sunset Cove had the duty to either provide a defense to Contractor or to pay the cost of Contractor's defense[.]" 263 at 308-09.

Homestead argues that "the only differences between *Sunset Cove* and this case are the source of the duty to defend and the party which held that duty. * * * In both cases, a conflict of interest arising from cross-claims prevented a single attorney from representing both defendants." Precision contends that *Sunset Cove* does not control because there the indemnitor refused to provide a defense and here the indemnitor accepted the tender of defense and the indemnitee then withdrew the offer. Precision insists that the "central task is to determine Homestead's relationship with Precision's attorney after the tender was accepted."

However, we do not reach the attorney-client relationship because we find, as did the trial court, that Precision did not unconditionally accept Homestead's offer of tender. Precision insists that it was "always willing to defend Homestead unconditionally," but the evidence does not support Precision's contention.[6]

---

[6] The evidence also does not support Precision's argument that Homestead consented to the "dual representation."

Precision did file an answer stating its acceptance of tender. Nonetheless, the evidence shows that, from the beginning of the lien foreclosure action, Precision qualified that acceptance. When Forsythe filed his action, Precision took the position that, before accepting tenders of defense, Berman needed "to know there is no conflict[.]" Berman then wrote that, if Homestead was not going to pay the amount owed, the parties "have to become adversaries[.]" That correspondence was followed two weeks later by Berman's letter proposing that Homestead admit that it owed Precision $7,000 and, if so, then "[o]n that basis I will proceed to defend all of the defendants[.]" The ongoing dispute finally culminated in Berman's presenting the alternative of Homestead placing funds into a trust account or Corrigan "plan[ning] on participating in the arbitration." In short, although Precision stated a willingness to defend, that willingness was hedged by its demand that Homestead acquiesce in its proposed resolution of the contract dispute.

Precision's situation is, thus, analogous to the indemnitor in *Sunset Cove*: ORS 87.070 obligated Precision to provide Homestead with a defense against Forsythe's foreclosure. Whether Precision was unable or unwilling to provide that defense unless Homestead agreed to the conditions for payment[7] did not relieve Precision of its obligation. *See Sunset Cove*, 263 Or at 309.

Precision also assigns error to the court's holding that Homestead prevailed on its cross-claim for attorney fees and costs incurred in defending against the Forsythe action and to the amount of fees awarded. There was no error. An indemnitor is liable for reasonable expenses incurred by an indemnitee in defending against a claim. *St. Paul Fire & Marine v. Crosetti Bros.*, 256 Or 576, 579, 475 P2d 69 (1970). We are not persuaded by Precision's argument that the amount awarded was not reasonable in the light of the ongoing uncertainty of Precision's defense. *See Waggoner v. Oregon Auto. Ins. Co.*, 270 Or 93, 526 P2d 578 (1974).

---

[7] Although Precision asserts that the lien foreclosure statutes "invite" resolution of all claims in one proceeding as a matter of judicial economy, it does not contend that it had no alternative to resolving its contract claim against Homestead in Forsythe's lien foreclosure proceeding.

■ Precision also assigns error to the court's finding that Homestead was entitled to a $1,354.41 offset to the amount claimed in Precision's cross-claim, which reduced Precision's award to $7,768.59. Under the contract between Homestead and Precision, Homestead was to provide all of the rock, which was limited to 2,186 cubic yards. About a month before Precision signed its contract, Homestead had ordered 123.2 cubic yards of rock which was placed at the entry to the sub-division. Homestead claimed that that rock was chargeable to Precision, and the trial court agreed.

Precision argues that the contract refers to the amount of rock that Precision would use to do its work. Its position is that the rock that was already spread at the entrance "and ground into the mud" was not rock that it used.

■ We are bound by the trial court's findings of fact, if there is evidence to support them. *Illingworth*, 297 Or at 694. There is evidence to support the offset. Shortly before the construction job was completed, the principals of Precision had a falling out, and Bernhardt finished the job as Precision's remaining principal. However, before that time, the negotiations and signing of contract documents had been done by the other two principals, T. J. Landis and Lance Landis. Homestead's president testified that Lance was fully aware of the rock that was already available for Precision to use on the project, including the disputed 123.2 cubic yards of rock that had already been delivered. Bernhardt admitted that he would not have known about any agreement made by Lance concerning the rock before Bernhardt took over. That was evidence from which the court could conclude that the disputed rock was rock used by Precision and chargeable to it.

■ Precision's final assignments are that the court erred in finding that Homestead was entitled to recover attorney fees and costs "in this proceeding" and awarding $12,500 for those fees. Precision is correct that there is no basis for the award.

■ Generally, attorney fees are not recoverable in the absence of a statute or contract provision authorizing the award. *High Tech Diesel, Inc. v. Littleton*, 127 Or App 242, 244, 872 P2d 984 (1994). We reject Homestead's contention

that ORS 87.070 "impliedly if not expressly contemplates an award of attorney fees." There is no attorney fee provision in ORS 87.070,[8] and we may not insert into ORS 87.070 language which is not there. ORS 174.010. Homestead also contends that "common law indemnity principles" should be extended to support the award, citing *Waggoner*. However, in *Waggoner*, an action involving a contract of indemnity, the issue was whether an award of fees was excessive. The case does not support the proposition that fees should be awarded in the absence of a contract or statute. We also reject Homestead's argument that ORCP 17, which was not cited by the trial court as a basis for attorney fees, supports the award. The court erred in awarding Homestead attorney fees and costs on its cross-claim.

Award of attorney fees to Homestead in the amount of $12,500 reversed; otherwise affirmed.

---

[8] Other provisions in ORS chapter 87 do provide for fees. *See, e.g.*, ORS 87.060(5) (attorney fees allowed to prevailing party on issues of validity and foreclosure of lien).