No. 10　　　　　March 19, 2015　　　　　25

IN THE SUPREME COURT OF THE
STATE OF OREGON

ECLECTIC INVESTMENT, LLC,
*Plaintiff,*

*v.*

Richard PATTERSON, et al.,
*Defendant.*

JACKSON COUNTY,
*Cross-Claim Plaintiff-Appellant,*
*Petitioner on Review,*

*v.*

Byron McALLISTER, Jr.,
dba Greater Crater Construction Company,
*Cross-Claim Defendant-Respondent,*
*Respondent on Review.*

(CC 07019L3; CA A150458; SC S062247)

En Banc

On review from the Court of Appeals.*

Argued and submitted November 6, 2014.

Michael Jewett, Michael Jewett, P.C., Ashland, argued the cause and filed the brief for petitioner on review.

James A. Wallan, Hornecker Cowling, LLP, Medford, argued the cause and filed the brief for respondent on review.

WALTERS, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

* Appeal from Jackson County Circuit Court, Daniel L. Harris, Judge. 261 Or App 457, 323 P3d 473 (2014).

**WALTERS, J.**

Jackson County (the county) is a defendant in this negligence action, in which plaintiff sought damages for damage to its real property. As an affirmative defense, the county alleged that plaintiff was negligent and was itself responsible for the damages that it had suffered. The county also filed a cross-claim against a codefendant (the contractor) seeking common-law indemnity. Plaintiff's negligence claim was tried to a jury, which found that plaintiff was more than 50 percent at fault. Therefore, under ORS 31.600, neither the county nor the contractor were liable to plaintiff. Nevertheless, the county had incurred costs in defending against plaintiff's claim, and it pursued its cross-claim for indemnity to collect those costs from the contractor. The trial court denied the county's indemnity claim, the county appealed, and the Court of Appeals affirmed. *Eclectic Investment, LLC v. Patterson*, 261 Or App 457, 323 P3d 473 (2014). For the reasons that follow, we also affirm.

The following facts are uncontested. Plaintiff, a property owner, hired the contractor to enlarge plaintiff's parking lot by excavating a slope above the parking lot. The contractor did not apply for an excavation permit before performing its work, as required by county ordinances. However, the contractor later applied for the necessary permit, which the county denied because it lacked sufficient detail. The contractor re-applied, and the county issued a preliminary permit. The county conducted an inspection and noted erosion problems with the slope and concerns about its soil composition and the adequacy of a retaining wall. As a result, the county withheld final approval. After another inspection of the construction site, the county granted final approval. The county did not require the contractor to make any change to the slope, which had a steep 1:1 grade. Roughly a year after the excavation, a rainstorm caused topsoil to wash off the slope onto plaintiff's parking lot and into a building, damaging plaintiff's property.

As relevant here, plaintiff alleged that the contractor had been negligent in its excavation of the slope and that the county had been negligent in approving that excavation

without requiring the contractor to make the slope safe.[1] Plaintiff alleged that, as a result of defendants' negligence, the slope had collapsed and damaged plaintiff's property. The county and the contractor both denied negligence. The county also alleged, as an affirmative defense, that plaintiff had been negligent in failing to apply for proper permits before beginning excavation and for failing to consult an engineer about the excavation. The county asked that plaintiff's damages be allocated in accordance with ORS 31.610, which apportions damages based on the comparative fault of all parties.[2] The county also filed a cross-claim for common-law indemnity against the contractor, alleging that "[the county's] negligence, if any, was passive and secondary as compared to the primary and active negligence of [the contractor]," and therefore that the contractor should indemnify the county. The county and the contractor agreed to sever the indemnity claim from the negligence claim for later determination by the trial court.

At trial on plaintiff's negligence claim, the county requested that the jury answer special questions pursuant

---

[1] Plaintiff also named two neighboring property owners as defendants, alleging that their negligence in maintaining their properties had contributed to the erosion. Those defendants are not parties to the indemnity claim at issue here, and we do not discuss them further.

[2] ORS 31.610 provides, in part:

"(1) Except as otherwise provided in this section, in any civil action arising out of bodily injury, death or property damage, including claims for emotional injury or distress, loss of care, comfort, companionship and society, and loss of consortium, the liability of each defendant for damages awarded to plaintiff shall be several only and shall not be joint.

"(2) In any action described in subsection (1) of this section, the court shall determine the award of damages to each claimant in accordance with the percentages of fault determined by the trier of fact under ORS 31.605 and shall enter judgment against each party determined to be liable. The court shall enter a judgment in favor of the plaintiff against any third party defendant who is found to be liable in any degree, even if the plaintiff did not make a direct claim against the third party defendant. The several liability of each defendant and third party defendant shall be set out separately in the judgment, based on the percentages of fault determined by the trier of fact under ORS 31.605. The court shall calculate and state in the judgment a monetary amount reflecting the share of the obligation of each person specified in ORS 31.600(2). Each person's share of the obligation shall be equal to the total amount of the damages found by the trier of fact, with no reduction for amounts paid in settlement of the claim or by way of contribution, multiplied by the percentage of fault determined for the person by the trier of fact under ORS 31.605."

to ORS 31.605.[3] The jury found that plaintiff had been more than 50 percent at fault, the county had been 7 percent at fault, and the contractor had been 4 percent at fault. Because ORS 31.600 provides that a claimant may not recover if the claimant's fault is greater than the combined fault of the other parties, the trial court entered judgment in favor of defendants.[4]

The county and the contractor then agreed to arbitrate the county's common-law indemnity claim. The county neither owed nor had paid any obligation to plaintiff, but it nevertheless sought to collect from the contractor the legal fees and costs that it had incurred in defending against plaintiff's negligence claim. The arbitrator found against the county, and the county appealed the arbitrator's decision to the trial court.

The case was tried to the court on stipulated facts. The county argued that it was entitled to indemnity under this court's decision in *Astoria v. Astoria & Columbia River R. Co.*, 67 Or 538, 548, 136 P 645 (1913), and that *Astoria* stands for the proposition that a party that is "actively"

---

[3] ORS 31.605 provides, in part:

"(1) When requested by any party the trier of fact shall answer special questions indicating:

"(a) The amount of damages to which a party seeking recovery would be entitled, assuming that party not to be at fault.

"(b) The degree of fault of each person specified in ORS 31.600(2). The degree of each person's fault so determined shall be expressed as a percentage of the total fault attributable to all persons considered by the trier of fact pursuant to ORS 31.600."

[4] ORS 31.600 provides, in part:

"(1) Contributory negligence shall not bar recovery in an action by any person or the legal representative of the person to recover damages for death or injury to person or property if the fault attributable to the claimant was not greater than the combined fault of all persons specified in subsection (2) of this section, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the claimant. This section is not intended to create or abolish any defense.

"(2) The trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, and the fault of any person with whom the claimant has settled. The failure of a claimant to make a direct claim against a third party defendant does not affect the requirement that the fault of the third party defendant be considered by the trier of fact under this subsection."

negligent must indemnify a party whose negligence is merely "passive." In response to that argument, the trial court remarked that the county "was not completely passive because it inspected the excavation twice." However, court also went on to consider more broadly, whether, in equity, the contractor rather than the county "*should have* discharged the obligation." (Emphasis in original). With regard to that question, the court observed that the *Restatement (Second) of Torts*, § 886B (1979), provides that indemnity should be granted where "[t]he indemnitor created a dangerous condition of land or chattels as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect." The court viewed the Restatement as favoring the county's position, but also considered the county's position to be at odds with the fact that "the jury found [the contractor] to be the least at fault of the parties." After considering that "important factor," the court reached two conclusions: first, that plaintiff's claim against the county was based on the county's independent negligence, not on vicarious liability, and, second, that "[t]he direct fault of the two parties involved in this indemnity action is relatively equal." The trial court therefore denied the county's indemnity claim.

The county appealed, arguing that the trial court had erred in failing to apply the rule articulated in *Astoria*, 67 Or at 548. The Court of Appeals disagreed and affirmed the decision of the trial court. *Eclectic*, 261 Or App at 465. Relying on cases decided after *Astoria,* the court concluded that the applicable legal standard is broader than that stated in *Astoria*. *Id* at 463. As the Court of Appeals explained it, although the distinction between active and passive negligence is one factor that a trial court may consider in determining whether indemnity is appropriate, the ultimate question is whether, in equity, and under the totality of the circumstances, the indemnitor rather than the indemnitee "'*should have* discharged the obligation.'" *Id*. (quoting the trial court's decision) (emphasis in original). The Court of Appeals decided that the trial court had correctly applied that legal standard and that its conclusions were supported by substantial evidence. *Id*. at 464-65. Moreover, the Court of Appeals reasoned, even if *Astoria* alone were controlling,

this case is distinguishable. *Id*. at 465. Unlike the governmental entity in *Astoria,* the county in this case was aware of the offending condition before it gave its approval. *Id*.

The county filed a petition for review, which we allowed. In this court, the county argues that the correct legal standard is set out in *Astoria*—that a passive tortfeasor may recover in indemnity from an active tortfeasor—and that the trial court erred in considering the jury's allocation of fault as a factor in deciding that the county was not entitled to indemnity. The contractor responds that, to the extent that *Astoria* requires that indemnity be determined based on whether a party's negligence was active or passive, it should be overruled. We begin therefore with a discussion of the legal standard that governs the county's claim for indemnity and an analysis of the extent to which a jury's allocation of fault is a factor in that determination.

Common-law indemnity is a judicially crafted remedy that allows parties to avoid the harsh results of the traditional common-law rule that "joint wrongdoers standing *in pari delicto* cannot compel contribution." *Astoria*, 67 Or at 547. As a result, under that common-law rule, joint tortfeasors were jointly liable for the full amount of a plaintiff's damages regardless of their respective degrees of fault. Common-law indemnity provided a means to shift the loss to the responsibly party:

> "[A] person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability. When allowed to one joint tortfeasor against another, indemnity operates as an exception to the common-law rule denying contribution among joint tortfeasors. Indemnity involves shifting the entire loss to the primarily responsible tortfeasor; contribution permits the loss to be apportioned among those jointly responsible."

Kenneth J. Sherk, *Common Law Indemnity Among Joint Tortfeasors*, 7 Ariz L Rev 59, 59-60 (1965) (internal citations omitted); *see also Prosser and Keeton on the Law of Torts* § 50, 336 (W. Page Keeton ed., 5th ed 1984) (describing "common law rule that there can be no contribution among those who are regarded as 'joint tortfeasors'").

In *Kennedy v. Colt*, 216 Or 647, 653, 339 P2d 450 (1959), this court explained the principles underlying common-law indemnity as follows:

> "'If the parties are not equally criminal, the principal delinquent may be held responsible to his codelinquent for damages incurred by their joint offense. *** [W]here the offense is merely *malum prohibitum*, and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers.'"

(Quoting *Lowell v. Boston & L. R. Corp.*, 40 Mass 24, 23 Pick 24 (1839).) Applying those principles to circumstances in which more than one tortfeasor is responsible for harm, courts have determined whether the character of one party's wrong was such that, as between the tortfeasors, that party should pay the entirety of the damages awarded. Courts have shifted responsibility for damages from one tortfeasor to the other based on a qualitative, equitable determination of the nature of the parties' negligence:

> "In explaining their reasons for granting indemnity *** courts have often resorted to complicated, and somewhat confusing, word formulae. The indemnitee's fault or negligence has been characterized as 'constructive,' 'secondary' or 'passive,' and the fault or negligence of the indemnitor as 'actual,' 'primary' or 'active.' The principle which has achieved the greatest currency is that a tortfeasor who is guilty of passive negligence only is entitled to indemnity against a tortfeasor who was guilty of active negligence. Concurrently negligent tortfeasors have often seized upon such judicial terminology in order to portray their negligent acts as amounting to no more than 'passive' negligence. And, as might be expected, courts have occasionally employed the terminology to 'bend' the law somewhat and award indemnity to a tortfeasor whose actual negligent act has concurred with that of another to produce harm to a third person."

Sherk, 7 Ariz L Rev at 64 (internal citations omitted).

In this case, the county relies on *Astoria*, 67 Or at 547, for the principle that common-law indemnity is available to a joint tortfeasor whose negligence was "passive" in comparison to the "active" negligence of another tortfeasor.

In *Astoria*, the city of Astoria had permitted a railroad company to build tracks on the city's streets and required that it lay the tracks evenly with the grade of the elevated street. *Id*. at 539-40. The railroad company failed to comply with that requirement, and the plaintiff was injured as a result. *Id*. at 540. The plaintiff sued the city, asserting that the city had negligently failed to maintain its streets in a safe condition, and prevailed. *Id*. at 542. The city then sued the railroad for indemnification. *Id*. This court affirmed the trial court's judgment for the city. *Id*. at 51. The court looked to the complaint that the plaintiff had filed against the city and explained that the plaintiff had alleged that the city's negligence was "passive" while the negligence of the railroad was "active":

> "From a résumé of the salient features of the declaration, it plainly appears that the active negligence charged is against the railroad company, while passive negligence only is laid at the feet of the municipality. All that is urged against the city is its failure properly to care for the safety of the traveling public[.] * * * [T]hat situation does not render the parties equally delinquent. The efficient and primary cause of the accident was the negligence of the company, while the subsequent negligence of the city in not enforcing obedience to the terms of the ordinance was constructive rather than actual."

*Id*. at 548.

In subsequent decisions, this court has looked askance at the distinction between "passive" and "active" negligence as a means of determining whether one of two tortfeasors ought to pay the whole of an award of damages. *See, e.g., Gen. Ins. Co. of Am. v. P. S. Lord Mech. Contractors*, 258 Or 332, 336, 482 P2d 709 (1971) ("The words 'passive' versus 'active' and 'secondary' versus 'primary' are not sufficiently precise to provide clear guidelines for this area."). Nonetheless, this court has continued to use that distinction:

> "In an action for indemnity, the claimant must plead and prove that (1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter. The last requirement means that, although the claimant

must have been legally liable to the injured third party, his liability must have been 'secondary' or his fault merely 'passive,' while that of the defendant must have been 'active' or 'primary.'"

*Fulton Ins. Co. v. White Motor Corp.*, 261 Or 206, 210, 493 P2d 138 (1972) (internal citations omitted).

In this case, the parties cite *Fulton* and focus on the third element of an indemnity action as described in that case and applied in *Astoria*. The county argues that, under *Astoria*, its negligence was merely passive and, therefore, the contractor ought to pay the fees and costs that the county incurred in defending against plaintiff's negligence claim. The contractor, in turn, argues that the county's negligence in approving the excavation was active. Significantly, however, neither party addresses the *Fulton* requirement that the party seeking indemnity from a joint tortfeasor establish that both tortfeasors were subject to liability to a third party. *Fulton,* 261 Or at 210.[5]

---

[5] Both parties cite *Fulton*, 261 Or 206, but neither discusses the first two elements of an indemnity claim as described in that case, *id*. at 210. This court has decided only one case since *Fulton* that could be understood as raising a question about those elements. In *Kamyr, Inc. v. Boise Cascade Corp.*, 268 Or 130, 519 P2d 1031 (1974), the court affirmed the trial court's denial of Kamyr's claim for indemnity against Boise, a codefendant in a negligence action. Kamyr had prevailed in the underlying action and therefore could not establish that it either had, or had discharged, an obligation to the plaintiff. However, in affirming the judgment for Boise, the court did not rely on that fact. Instead, the court reasoned that Boise was entitled to prevail because Kamyr had failed to prove that, as between Kamyr and Boise, it was Boise that would have been primarily liable to the plaintiff in the underlying case. *Id*. at 134.

In reaching that conclusion, the court distinguished the "language" in another case, *U. S. Fire Ins. Co. v. Chrysler Motors Corp.*, 264 Or 362, 366, 505 P2d 1137 (1973), which stated that our cases consistently had "required the claimant in an indemnity action to show that he has discharged a legal obligation to a third party." In *Kamyr*, the court said that the "language" in *Kamyr* was contrary to the "language" in *U.S. Fire*, but was not contrary to the holding in *U.S. Fire* that a party seeking indemnity must plead and prove that the other tortfeasor had "primary liability." 268 Or at 133 n 1. We do not read *Kamyr* as eliminating the *Fulton* requirement that, to be entitled to indemnity, both the indemnitee and the indemnitor must be subject to joint liability to a third party. In *Kamyr*, the court did not overrule *U.S. Fire* or *Fulton* and apparently viewed Kamyr's claim against Boise as a tort claim for negligent injury, not solely as a claim for indemnity. *Id*. at 136. The court so described Kamyr's claim and concluded that it was unavailing because "there is no basis upon which to find that [Boise's] negligence was the legal cause of [Kamyr's] financial injury." *Id*. at 137. A special concurrence suggested that the majority's entire discussion of indemnity was inapposite for that reason. *Id*. at 141 (McAllister, J., concurring).

There is good reason why both tortfeasors must be subject to liability to a third party as a precondition to a common-law indemnity claim. As explained by the *Restatement (Third) of Restitution* (2013), the *Restatement (Third) of Torts: Apportionment of Liability* (2010), and George E. Palmer, *Law of Restitution* (1978; supp 2014), the theory underlying both indemnity and contribution is that of restitution for unjust enrichment. One tortfeasor is entitled to restitution from another if the tortfeasor seeking indemnity has provided a benefit to the other tortfeasor: "'Indemnity, a form of restitution, is founded on equitable principles; it is allowed where one person has discharged an obligation that another should bear; it places the final responsibility where equity would lay the ultimate burden.'" Reporter's Note, *Restatement (Third) of Restitution* § 23 comment a (quoting *Hunt v. Ernzen*, 252 NW2d 445, 447-48 (Iowa 1977)). Thus, if two tortfeasors are subject to liability, and one discharges that liability although in equity the other should have done so, then the discharging tortfeasor may recover restitution—in the form of indemnity—from the tortfeasor who should have fulfilled that responsibility. Without potential liability to a third party, the latter tortfeasor receives no benefit from the former and cannot be required to repay what it did not receive. As noted in the *Restatement (Third) of Restitution*, the determination of "primary" and "secondary" liability requires an underlying "allocation of the common liability as between claimant and defendant, whereby their joint obligation to a third person is assigned to the defendant *inter se*." *Id*. at § 23 comment b. Accordingly, a claim for indemnity presumes that both tortfeasors are subject to joint liability for a plaintiff's damages.

The problem in this case, although neither party identifies it, is that Oregon law no longer provides for joint liability of multiple tortfeasors. Instead, since *Astoria* and *Fulton*, the Oregon Legislative Assembly has instituted a system of comparative fault in which (1) the trier of fact allocates fault and responsibility for payment of damages between the parties; and (2) each tortfeasor is liable for damages attributable to only its own

negligence.[6] ORS 31.610(1) provides that "in any civil action
\*\*\* the liability of each defendant for damages awarded to
plaintiff shall be several only and shall not be joint." ORS
31.610(2) states that damages shall be awarded "in accor-
dance with the percentages of fault determined by the trier
of fact under ORS 31.605." ORS 31.600(2) requires that the
trier of fact "compare the fault of the claimant with the fault
of any party against whom recovery is sought, the fault of
third party defendants who are liable in tort to the claim-
ant, and the fault of any person with whom the claimant has
settled." And ORS 31.605(1)(b) provides that, on request of
any party, the trier of fact shall specify the "degree of fault of
each person" and express that degree of fault "as a percent-
age of the total fault attributable to all persons considered
by the trier of fact." Those statutes set out a comprehensive
system for allocating fault between the parties and distrib-
uting liability for damages severally in accordance with that
allocation.

A claim for common-law indemnity is not consistent
with that system. As explained, courts originally recognized
claims for common-law indemnity to provide a more equi-
table apportionment of damages than was possible under
a traditional regime that did not allow contribution among
tortfeasors. *See* W. Page Keeton, *Contribution and Indemnity
Among Tortfeasors*, 1969 Ins Coun J 630, 630 (1969) ("The
twin rights of contribution and indemnity exist only to take
the sting out of the common[-]law rules \*\*\*. Historically,
neither the common[-]law courts nor legislative bodies were
sympathetic with the wrongdoer."). However, "[w]hen joint
and several liability is abolished, a contribution rule becomes
nugatory." Henry Woods & Beth Deere, *Comparative Fault*
§ 13:5, 240 (3d ed 1996, supp 2013). As a result, "[i]ndem-
nity between tortfeasors based on 'active-passive negligence'
or 'primary-secondary liability' has now generally yielded
to a percentage comparison of fault." *Id*. § 13:11 at 254-55.
The *Restatement (Third) of Torts: Apportionment of Liability*

---

[6] In 1971, the Oregon Legislative Assembly enacted the original compara-
tive negligence statute, *former* ORS 18.470, *renumbered as* ORS 31.600. Or Laws
1971, ch 668, § 1. In 1975 and 1987, the legislature amended the comparative
negligence statutes, Or Laws 1975, ch 599, § 1; Or Laws 1987, ch 774, § 7, and
in 1995, it eliminated joint liability and provided that a defendant was liable for
only its own negligence, Or Laws 1995, ch 696, § 3.

§ 22 specifically disavows the *Second Restatement*'s provision for indemnity in cases in which "the indemnitor was 'actively' negligent and the indemnitee was 'passively' negligent * * * [or] the indemnitee was 'secondarily' liable and the indemnitor was 'primarily' liable." The Reporter's Note explains that those "doctrines were developed before comparative responsibility" and as such "are inconsistent with the goals of comparative responsibility." *Id.*; *accord Prosser and Keeton* § 51 at 344 ("Changes in the law of contribution and comparative fault may materially alter the context and the equities, thus causing courts to reconsider rules of indemnity. * * * Adoption of comparative fault may be seen as creating another option—allocating loss according to percentages.").

Consequently, "a clear majority [of decisions from comparative negligence jurisdictions] have held that the statutory adoption of a comparative negligence scheme effectively abrogates the theory of indemnity based on the active/passive negligence dichotomy." *Gomez v. Am. Elec. Power Serv. Corp.*, 726 F2d 649, 652 (10th Cir 1984) (citing decisions from six jurisdictions); *see, e.g.*, *Pachowitz v. Milwaukee & Suburban Transp. Corp.*, 56 Wis2d 383, 386-87, 202 NW2d 268 (1972) (rejecting the distinction between active and passive negligence in a comparative negligence statutory scheme); *see also B & B Auto Supply, Sand Pit, & Trucking Co. v. Cent. Freight Lines, Inc.*, 603 SW2d 814, 816-17 (Tex 1980) (following *Pachowitz* and explaining that "there is no longer any basis for requiring one tortfeasor to indemnify another tortfeasor when both have been found negligent and assessed a percentage of fault by the jury"). The Supreme Court of Kansas has stated bluntly that "[c]omparative liability, with its superior mechanism for allocating responsibility, renders the all or nothing theory of implied indemnity an anachronism." *Kennedy v. City of Sawyer*, 228 Kan 439, 459-60, 618 P2d 788 (1980).[7]

---

[7] The exception to those lines of cases appears in the context of strict liability. Courts are reluctant to permit apportionment of damages in cases in which one party's liability results from the manufacture of an unreasonably dangerous product. In general, "[t]he manufacturer of a defective product is subject to the ultimate liability in indemnity and may not seek indemnity from subsequent participants in the distributive chain." Woods and Deere, *Comparative Fault*, §13:12 at 268.

In this case, although neither party has argued that Oregon's comparative fault system eliminates the need for judicially created indemnity in situations such as this one—in which a defendant is liable, if at all, for only the damages that resulted from its own negligence—we cannot avoid the issue that that system now presents. Common-law indemnity is a judicially created claim intended to equitably allocate liability among joint tortfeasors. We cannot respond to the parties' request that we reconsider the principles that underlie such a claim and determine whether a jury's allocation of fault should be a factor in a court's analysis without also considering the fact that the Oregon Legislative Assembly has created a system of comparative negligence that fully addresses the problem that common-law indemnity was crafted to solve.

We agree with the reasoning of the authorities that we have cited: The doctrine of common-law indemnity was developed before comparative responsibility and is inconsistent with its framework. In cases in which the Oregon comparative negligence statutes apply and in which jurors allocate fault—and thereby responsibility—for payment of damages between tortfeasors, and each tortfeasor's liability is several only, a judicially created means of allocating fault and responsibility is not necessary or justified.[8]

In this case, the Oregon comparative negligence statues apply. Under ORS 31.610(1), the county was not subject to potential liability for the conduct of the contractor; the county's potential liability was for only its own conduct. Therefore, although both the county and the contractor could have been liable to plaintiff, their liability would have been several only, not joint. Furthermore, the county asked that the jury answer special questions under ORS 31.605 and allocate the degree of fault of each party. The jury found plaintiff to be more than 50 percent at fault, and, consequently, neither the county nor the contractor was liable to plaintiff. As a result, the county was neither potentially nor

---

[8] Our holding extends only to cases in which the Oregon comparative negligence statutes apply. Our decision in this case does not affect other types of indemnity claims, such as claims based on contractual agreements. *See generally, Waggoner v. Oregon Auto. Ins. Co.*, 270 Or 93, 97, 526 P2d 578 (1974) (discussing indemnity action based upon contractual agreement).

actually liable to plaintiff for the conduct of the contractor. In that circumstance, the trial court correctly denied the county's claim for common-law indemnity.[9]

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[9] We do not decide whether a prevailing defendant may be permitted to recover its costs of defense from another tortfeasor on a theory other than common-law indemnity. Although this court has not expressly addressed the question, other jurisdictions have permitted tort claims to recover such costs in limited circumstances. *See Restatement (Second) of Torts* § 914 (1979) ("One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."); *see generally, Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P3d 1067, 1071 (Colo 2010) (acknowledging that "the litigation costs incurred by a party in separate litigation may sometimes be an appropriate measure of compensatory damages against another party"); *Taylor v. S. Pac. Transp. Co.*, 130 Ariz 516, 523, 637 P2d 726 (1981) (permitting plaintiff to recover costs and expenses of litigation necessary to protect his interest where wrongful act of defendant involved plaintiff in litigation). However, such actions do not lie unless the third party action that the plaintiff was required to defend against existed only because of the tort of the defendant. *Restatement* § 914 comment b.

Here, the county's cross-claim was not a tort claim against the contractor alleging that the contractor had committed a tort that required the county to protect its interests by defending a claim brought by plaintiff or that plaintiff's claim against the county existed only because of the tort of the contractor. Rather, plaintiff alleged that the county was liable for its own negligence.